Becker v. State







COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

)
ALFONSO URIAS,                                          )                  No. 08-04-00343-CR
)
                                    Appellant,                        )                             Appeal from
)
v.                                                                          )                  34th District Court
)
THE STATE OF TEXAS,                                   )                  of El Paso County, Texas
)
                                    Appellee.                          )                  (TC# 20030D02995)

O P I N I O N

            Alfonso Urias appeals his conviction of unlawful possession of more than fifty but less than
2,000 pounds of marihuana. A jury found Appellant guilty and the court assessed his punishment
at imprisonment for a term of four years. Finding no error, we affirm.
FACTUAL SUMMARY
            On May 12, 2003, Sergeants Jose Sanchez and Aaron Grigsby were working in their capacity
as undercover agents for the Texas Department of Public Safety Narcotics Services. Sanchez was
posing as a truck driver hired to transport approximately 500 pounds of marihuana from El Paso to
Ohio. Approximately mid-day, Sanchez drove a 1996 Kenworthy semi truck-tractor to a parking lot
in order to negotiate the deal. Grigsby remained in the cab of the truck hidden from view but he
could view the meeting and hear the conversation. Abram Carrasco, Appellant, and his brother
Frank Urias, arrived at the location in a silver BMW. Sanchez exited the truck and met with
Carrasco, Appellant, and Frank. All three of the men stood within a few feet of Sanchez as he
discussed the transaction with Carrasco. Sanchez described Appellant as participating in the
negotiation. Sanchez asked how the marihuana was packaged and Carrasco replied that it had not
been packaged. Carrasco agreed with Sanchez’s suggestion that they put the marihuana in duffel
bags because it would be easier to load and unload. Appellant was present during the conversation
and appeared to understand what was being discussed. When Sanchez told the men that he wanted
to leave as soon as possible, they responded that they had to return to the stash house to package the
marihuana. They agreed to contact each other later to arrange a meeting place. Rather than giving
Sanchez a contact in Ohio, Carrasco advised Sanchez that either he, Appellant, or Frank would
follow Sanchez to Ohio and flag him down so that the marihuana could be turned back over to them. 
            A surveillance unit followed Carrasco, Appellant, and Urias to a house on the west side of
El Paso. At approximately 12:30 p.m., DPS Sergeant Glen Shioji observed Appellant and someone
Shioji described as “a co-defendant” arrive at the residence in a silver BMW. They met another
person who was driving a white, four-door Cadillac. All three men unloaded several black gym bags
from the trunk of the Cadillac and carried them into the garage. Shioji saw Appellant carrying the
bags which appeared heavy.
            After a short time, one of Appellant’s co-defendants left in the BMW and Appellant left in
the Cadillac. Another officer followed the Cadillac to a Ross Department Store. Appellant returned
in the Cadillac at about 1:10 p.m. and he entered the garage with a shopping bag containing duffel
bags. A short time later, Shioji saw Appellant and Frank loading five or six black duffel bags into
the Cadillac. The bags looked full and heavy. After they shut the garage door, Frank remained
outside and stood looking around as though he were looking for surveillance. About ten minutes
later, Appellant got into the Cadillac and drove a short distance to a red Nissan that was parked
across the street. Appellant and Frank unloaded the bags and put them in the Nissan. Some of the
bags were loaded in the rear hatch and others were put in the front. As Appellant and Frank returned
to the house, they both looked around. Based on his experience, Shioji believed they were looking
for surveillance. Approximately an hour later, a green Camaro arrived at the house and the driver
went inside. A short time later, all three men exited the house. At 2:24 p.m., the driver of the green
Camaro got into the red Nissan and left. Appellant and Frank soon left in the BMW. 
            DPS trooper Juan Briano was assigned to stop a red 1992 Nissan 240-SX with Chihuahua
license plates. Briano and his partner, Ed Garza, followed the Nissan on I-10 East and observed the
driver commit a traffic violation by tailgating the vehicle in front of him. They made a traffic stop
and Briano approached the driver’s side of the vehicle. As Briano explained why he had stopped the
vehicle, he saw three black duffel bags inside the vehicle and smelled a strong odor of fresh
marihuana emanating from inside the vehicle. Briano identified the driver from his license as Joseph
Zarzosa. Zarzosa would not answer when Briano asked him what was in the duffel bags. When
Zarzosa refused to consent to a search, Briano called a K-9 unit to the scene. 
            Border Patrol Agent Mike Riggin arrived with his canine and conducted a search of the
vehicle’s exterior. The dog alerted at the open window of the driver’s side door. Briano opened the
duffel bag in the front seat and retrieved a brick of what appeared to be marihuana. He cut open the
bag and confirmed that it was marihuana based on his training and experience. Three duffel bags
were in the front of the vehicle and three more bags were in the trunk. The seized marihuana
weighed 340.80 pounds and had a street value of approximately $350 per pound. 
            Shortly after the Nissan was stopped and the marihuana seized, Appellant was arrested while
attempting to hitchhike on the I-10 access road near the residence. When Appellant saw the officer,
he appeared nervous and attempted to walk away from the vehicle which had stopped to pick him
up. Appellant did not have any marihuana or paraphernalia on his person, but his wallet contained
a receipt for the duffel bags which had been purchased earlier that day at the department store. 
            The jury found Appellant guilty as alleged in the indictment. At the punishment hearing, the
State established that at the time of his arrest, Appellant was wearing an ankle monitor because he
was on federal probation for possession with intent to distribute more than 50 kilograms of
marihuana. On October 25, 2004, the court sentenced Appellant to serve a term of four years’
imprisonment. That same day, he filed a motion for new trial but the motion was overruled by
operation of law. 
LEGAL SUFFICIENCY
            In Issue One, Appellant argues that the evidence is legally insufficient to prove possession
because the State failed to affirmatively link him to the marihuana. 
Standard of Review
            In reviewing the legal sufficiency of the evidence to support a criminal conviction, we must
review all the evidence, both State and defense, in the light most favorable to the verdict to
determine whether any rational trier of fact could have found the essential elements of the offense
beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 318-19, 99 S.Ct. 2781, 2789, 61
L.Ed.2d 560, 573 (1979); Geesa v. State, 820 S.W.2d 154, 159 (Tex.Crim.App. 1991), overruled on
other grounds, Paulson v. State, 28 S.W.3d 570 (Tex.Crim.App. 2000). We do not resolve any
conflict of fact or assign credibility to the witnesses, as it was the function of the trier of fact to do
so. See Adelman v. State, 828 S.W.2d 418, 421 (Tex.Crim.App. 1992); Matson v. State, 819 S.W.2d
839, 843 (Tex.Crim.App. 1991). Instead, our duty is only to determine if both the explicit and
implicit findings of the trier of fact are rational by viewing all of the evidence admitted at trial in a
light most favorable to the verdict. Adelman, 828 S.W.2d at 422. In so doing, any inconsistencies
in the evidence are resolved in favor of the verdict. Matson, 819 S.W.2d at 843. Further, the
standard of review is the same for both direct and circumstantial evidence cases. Geesa, 820 S.W.2d
at 158.
Possession and Affirmative Links
            A person commits the offense of possession of marihuana if he knowingly or intentionally
possesses the controlled substance. See Tex.Health&Safety Code Ann. § 481.121 (Vernon
2003). Possession is defined as “actual care, custody, control, or management.” Tex.Health&
Safety Code Ann § 481.002(38)(Vernon Supp. 2005). To support a conviction for unlawful
possession of a controlled substance, the State must prove that the accused exercised actual care,
custody, control, and management over the contraband, and that the accused knew the substance he
possessed was contraband. See Brown v. State, 911 S.W.2d 744, 747 (Tex.Crim.App. 1995);
Menchaca v. State, 901 S.W.2d 640, 651 (Tex.App.--El Paso 1995, pet. ref’d).
            When a defendant is not in exclusive possession or control of the place where the drugs are
found, an affirmative link must be established between the accused and the contraband
demonstrating both that the accused had control over it and had knowledge of its existence and
character. See Brown, 911 S.W.2d at 747. This “affirmative link” may be shown by either direct
or circumstantial evidence, and it must establish, to the requisite level of confidence, that the
accused’s connection with the drug was more than just fortuitous. Id. Courts have looked to various
factors in determining the existence of an affirmative link, including the following non-exclusive list: 
(1) the defendant’s presence at the location where a search warrant was executed; (2) whether the
contraband was in plain view; (3) the defendant’s proximity to and accessibility of the contraband;
(4) whether the defendant was under the influence of narcotics when arrested; (5) whether the
defendant possessed other contraband when arrested; (6) whether the defendant made incriminating
statements when arrested; (7) whether the defendant attempted to flee; (8) whether the defendant
made furtive gestures; (9) whether there was an odor of the contraband; (10) whether other
contraband or drug paraphernalia was present; (11) whether the defendant owned or had the right
to possess the place where the drugs were found; (12) whether the contraband was found in an
enclosed place; (13) whether the accused was the operator of an automobile where contraband was
found; (14) whether the defendant was found with a large amount of cash or weapons at the time of
his arrest; and (15) whether the conduct of the accused indicated a consciousness of guilt; and (16)
whether there was a significant amount of contraband. See Gregory v. State, 159 S.W.3d 254, 260
(Tex.App.--Beaumont 2005, pet. ref’d); Nguyen v. State, 54 S.W.3d 49, 53 (Tex.App.--Texarkana
2001, pet. ref’d); Hurtado v. State, 881 S.W.2d 738, 743 n.1 (Tex.App.--Houston [1st Dist.]1994,
pet. ref’d). The number of factors present is not as important as the logical force the factors have
in establishing the elements of the offense. Corpus v. State, 30 S.W.3d 35, 38 (Tex.App.--Houston
[14th Dist.] 2000, pet. ref’d); Whitworth v. State, 808 S.W.2d 566, 569 (Tex.App.--Austin 1991, pet.
ref’d).
            Appellant concedes there was evidence of his proximity to and accessibility of the contraband
but complains that none of the other factors are present. We disagree as there is also evidence of
factors (9), (12), (15), and (16). Additionally, the evidence established that Appellant exercised
actual care, control, custody, and management of the contraband by physically loading it into two
different vehicles. Appellant had knowledge of the drug transaction based upon his presence at and
participation in the negotiation with Sanchez earlier that same day.


 That negotiation included an
agreement that the men would return to the stash house and package the marihuana in duffel bags. 
Appellant drove a white Cadillac to a local department store and purchased black duffel bags which
he took into the house. A short time later, Appellant and two other men came out of the house with
six black duffel bags containing 340 pounds of marihuana, which they loaded into the same Cadillac. 
Appellant drove the Cadillac across the street and he and his brother transferred the duffel bags into
a Nissan. Sergeant Briano, who later made the stop of the Nissan, testified that the duffel bags
emitted a strong odor of fresh marihuana. As Appellant walked back to the house, he looked around
for surveillance. Shortly after the marihuana was seized, Appellant was no longer in the silver BMW
but was found attempting to hitch a ride on the interstate access road. When the evidence is
considered in the light most favorable to the verdict, it is sufficient to show beyond a reasonable
doubt that Appellant knowingly exercised care, custody, and control of the marihuana. Issue One
is overruled.
CONTINUANCE
            In Issue Two, Appellant complains that the trial court abused its discretion by denying his
request for a mid-trial continuance in order to obtain the attendance of a material witness. During
cross-examination, defense counsel asked Sergeant Sanchez if he had been using a confidential
informant (CI) on the day of the offense. Sanchez replied that a CI had been present during the
transportation negotiations. The defense then asked Sanchez if the CI would be able to corroborate
or refute Sanchez’s testimony regarding Appellant’s presence and participation in the negotiations. 
Sanchez said that the CI would corroborate his testimony but he agreed with defense counsel that
the effect of the CI’s testimony would be for the jury to decide. Appellant then made a request
pursuant to Rule 508 of the Rules of Evidence for disclosure of the CI’s identity. The State
responded that the CI had only been present at the negotiation and had not been present when the
marihuana was loaded into the vehicle. The trial court took the motion under advisement and
granted it the following morning. The State provided the CI’s identity and informed Appellant that
the CI was presently serving in the military in Iraq. Appellant requested a recess so that he could
secure the CI’s presence, but the trial court denied it noting that the denial could be the basis for a
new trial.
            On appeal, Appellant claims that his motion for continuance should have been granted
because he was surprised by the State’s disclosure that a confidential informant had been present at
the negotiation. In support of his argument, he cites Article 29.13 of the Code of Criminal Procedure
and Barney v. State, 698 S.W.2d 114 (Tex.Crim.App. 1985). Article 29.13 provides:
A continuance or postponement may be granted on the motion of the State or
defendant after the trial has begun, when it is made to appear to the satisfaction of the
court that by some unexpected occurrence since the trial began, which no reasonable
diligence could have anticipated, the applicant is so taken by surprise that a fair trial
cannot be had.

Tex.Code Crim.Proc.Ann. art. 29.13 (Vernon 1989). Under the standard of Article 29.13, it must
appear to the satisfaction of the court that “a fair trial cannot be had” before a continuance or
postponement is warranted. Barney, 698 S.W.2d at 127. A motion for continuance sought on the
grounds of surprise is addressed to the sound discretion of the trial court. Id. Consequently, we will
not sustain the issue unless an abuse of discretion is shown. Id.
            Other than the bare assertions in Appellant’s brief, there is no evidence in the record that the
disclosure regarding the existence of an informant was a surprise, that it could not have been
anticipated with the exercise of reasonable diligence, or that defense counsel was so taken by
surprise that a fair trial could not be had. Assertions in an appellate brief unsupported by evidence
cannot be accepted as fact. Janecka v. State, 937 S.W.2d 456, 476 (Tex.Crim.App. 1996); Davila
v. State, 651 S.W.2d 797, 799 (Tex.Crim.App. 1983). Absent this evidence, Appellant has failed
to establish that the court abused its discretion by denying his request for a continuance. Issue Two
is overruled.
EXTRANEOUS OFFENSE EVIDENCE
            In Issues Three through Five, Appellant argues that the court erroneously admitted evidence
of his meeting with Sanchez that morning because it constituted inadmissible extraneous offense
evidence. According to Appellant, the State failed to prove that the marihuana offense committed
a short time later was connected to the earlier negotiations. The State responds that the evidence is
not an extraneous offense but is instead part of the charged offense. We agree.
            An accused may not be tried for some collateral crime or for being a criminal generally.
Tex.R.Evid. 404(b). In the face of a proper objection, evidence of other wrongful acts is not
admissible to prove the character of the person to establish that he acted accordingly regarding the
alleged offense. Montgomery v. State, 810 S.W.2d 372, 386 (Tex.Crim.App. 1990); Lazcano v.
State, 836 S.W.2d 654, 657 (Tex.App.--El Paso 1992, pet. ref’d). An extraneous offense may be
admissible if it has relevance apart from its tendency to prove the character of a person in order to
show that he acted in conformity therewith. Montgomery, 810 S.W.2d at 387; Lazcano, 836 S.W.2d
at 657. Evidence which logically serves such purposes as “proof of motive, opportunity, intent,
preparation, plan, knowledge, identity, or absence of mistake or accident” is relevant beyond its
tendency to prove conforming character. Montgomery, 810 S.W.2d at 387; Lazcano, 836 S.W.2d
at 657; Tex.R.Evid. 404(b).
            An extraneous offense is defined as any act of misconduct, whether resulting in prosecution
or not, that is not shown in the charging papers. Rankin v. State, 953 S.W.2d 740, 741
(Tex.Crim.App. 1996); Meador v. State, 941 S.W.2d 156, 161 (Tex.App.--Corpus Christi 1996, pet.
ref’d). The indictment charged Appellant with knowingly possessing more than fifty but less than
2,000 pounds of marihuana on May 12, 2003. Contrary to Appellant’s argument, the trial court
could have reasonably inferred that the negotiation which took place that morning was directly
connected to the charged offense, particularly since the evidence showed that immediately following
the discussion, Appellant obtained duffel bags for packing the marihuana in the manner suggested
by Sanchez, he packed the marihuana into those duffel bags, and he loaded it into a vehicle for
delivery that same afternoon as had been discussed. Appellant’s presence at and participation in the
negotiation is not a separate offense, but is part of the evidence showing that Appellant knowingly
exercised care, custody, control and management of the marihuana on the date alleged in the
indictment. As such, it is part of the charged offense. 
            Because Rule 404(b) is inapplicable, the State was not required to give Appellant notice of
its intent to introduce this evidence. Furthermore, the trial court did not abuse its discretion by
concluding that the evidence was relevant or that its probative value is not substantially outweighed
by the danger of unfair prejudice. See Tex.R.Evid. 401, 403. Issues Three through Five are
overruled.
MOTION FOR NEW TRIAL
            In his final issue, Appellant argues that the trial court abused its discretion by refusing to
conduct a hearing on his motion for new trial. Appellant timely filed a motion for new trial asserting
that a material witness, the confidential informant, was unavailable for trial. In the motion,
Appellant stated his belief that the CI’s testimony “would tend to establish the defendant’s
innocence, namely that the defendant was not present at the initial meeting to negotiate the drug
transaction (two prosecution witnesses mistakenly or falsely place the defendant at the meeting.)” 
The motion is not supported by an affidavit but is verified by Appellant. By written order attached
to the motion, the trial court set the matter for a hearing to be held on November 18, 2004. The
record does not reflect whether the hearing was held on that date.
            A defendant is entitled to a hearing on his motion for new trial if the motion and
accompanying affidavit(s) raise matters not determinable from the record, upon which the accused
could be entitled to relief. Wallace v. State, 106 S.W.3d 103, 108 (Tex.Crim.App. 2003); Reyes v.
State, 849 S.W.2d 812, 816 (Tex.Crim.App. 1993). To be sufficient to entitle the defendant to a
hearing, the motion for new trial and accompanying affidavits need not establish a prima facie case
for a new trial. Wallace, 106 S.W.3d at 108; Jordan v. State, 883 S.W.2d 664, 665 (Tex.Crim.App.
1994). Rather, they must merely reflect that reasonable grounds exist for holding that such relief
could be granted. Wallace, 106 S.W.3d at 108; Martinez v. State, 74 S.W.3d 19, 22 (Tex.Crim.App.
2002). The purpose of the hearing is to give the defendant an opportunity to fully develop the
matters raised in his motion. Wallace, 106 S.W.3d at 108; Martinez, 74 S.W.3d at 21. If the trial
court denies a hearing on the motion for new trial and the defendant appeals from that denial, the
appellate court must review the trial court’s decision for abuse of discretion. Wallace, 106 S.W.3d
at 108; Martinez, 74 S.W.3d at 22.
            The record does not support Appellant’s assertion that the trial court refused to conduct a
hearing on his motion for new trial given that the court, by written order, set a hearing on the motion.
The record does not reflect whether the hearing was held, or if it was not, who was at fault or
whether efforts were made to re-schedule the hearing. We will not presume from a silent record that
the court refused to conduct the hearing on the scheduled date or that the court refused to re-schedule
it. It was incumbent on Appellant to develop a record demonstrating that the court refused to
conduct the hearing or otherwise deprived Appellant of the opportunity to fully develop the matters
raised in his motion. See Johnson v. State, 925 S.W.2d 745, 748 (Tex.App.--Fort Worth 1996, pet.
ref’d). Issue Six is overruled. The judgment of the trial court is affirmed.


February 23, 2006                                                       
                                                                                    ANN CRAWFORD McCLURE, Justice

Before Barajas, C.J., McClure, and Chew, JJ.

(Do Not Publish)